## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE, FLORIDA

**DANIEL VERNON, CNA,**

       **Plaintiff,**

**vs.**                                    **CASE NO: _____**

                                          **JURY TRIAL DEMAND**

**DUVAL MEDICAL INVESTORS, LLC,**
**d/b/a LIFE CARE CENTERS  OF JACKSONVILLE.**
**AND LIFE CARE  CENTERS OF AMERICA, INC.,**

       **Defendants.**

_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff **DANIEL VERNON, CNA** (hereinafter referred to as "Vernon" and "Plaintiff") by and though the undersigned attorney, files this Complaint and Demand For Jury Trial against Defendant **DUVAL MEDICAL INVESTORS, LLC d/b/a LIFE CARE CENTERS OF JACKSONVILLE,** and **LIFE CARE CENTERS OF AMERICA, INC.** (hereinafter Defendants are collectively referred to as "LCCJ") and as grounds state as follows:

**I.**                      **PREAMBLE**

*" An employer who fires an individual merely for being gay or transgender violates Title VII."*

    **--- The Honorable Neil Gorsuch, U.S. Supreme Court Justice**, <u>*Bostock vs. Clayton County*</u>.
      United States Supreme Court Decision (Case No. 17–1618, June 2020)

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

## II.  **NATURE OF THIS ACTION**

1.     This legal action is brought by Vernon to enforce the anti-retaliation provisions of The Civil Rights Act of 1964 as amended ("Title VII") and is being filed by Vernon in accord with the recent United States Supreme Court's ruling in *Bostock vs. Clayton County Georgia* (Case No. 17-1618).[1]

2.     Vernon is an "out of the closet" openly gay, homosexual male that was employed by LCCJ. LCCJ's management allowed its female managers/employees to incessantly harass Vernon because of his gender/sexual orientation and LCCJ's management allowed his female managers/co-workers to direct offensive statements at him, including but not limited to: **"You want to be a woman"..."Are you are a woman"...." "You are a Sissy"..... " You walk and act like a woman"....." You talk like a woman"**, etc.

3.     After Vernon had opposed and reported LCCJ's the unlawful discrimination and hostile work environment that he was experiencing to LCCJ's Executive Director(s),  LCCJ's management unlawfully retaliated against Vernon by over-scrutinizing his work, subjected him to unequal, more demanding and difficult work tasks, maliciously revoked his approved leave to prevent him from attending his friend's wedding, and LCCJ fabricated <u>false reasons</u> to subject Vernon to discipline.

---

[1] The U.S. Supreme Court ruled that it is unlawful under federal law for employers to discriminate against employees based on sexual orientation or gender identity. *Bostock vs. Clayton County* (Case No. 17–1618), 723 Fed. Appx. 964, reversed and remanded; No. 17–1623, 883 F. 3d 100, and No. 18–107, 884 F. 3d 560, affirmed.

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

4.     Vernon participated in <u>three</u> "face-to-face" meetings with LCCJ's Executive Director(s) to complain about LCCJ's failure to conduct a proper investigation of his complaints and he complained about LCCJ's failure to discipline the offending employees that were harassing, bullying, and intimidating him because of his sexual orientation.

5.     Rather than show concern for Vernon's unlawful discrimination/retaliation complaints, on March 5, 2020, the very day that Vernon was again exercising his federal and state employment rights, without good cause, LCCJ's Executive Director publicly embarrassed Vernon, humiliated Vernon and threatened to call the Jacksonville Sheriff's Office to have him arrested/escorted if he did not immediately leave the LCCJ premises.

6.     Vernon's attraction to the same sex or his presentation as a different sex from the one assigned him at birth, played an important role in LCCJ's failure to investigate and LCCJ's decision to retaliate against Vernon, to terminate Vernon's employment and to publicly demean, embarrass, and belittle Vernon in the presence of LCCJ's patients/residents and employees.

7.     LCCJ's unlawful harassment, discrimination, retaliation, and intimidation was malicious, intentional, reckless, callous and demonstrates a callous disregard for Vernon's employment rights. LCCJ's unlawful discrimination and retaliation have caused Vernon lifetime humiliation, severe emotional distress, and the permanent loss of his self-dignity. In this action, Vernon seeks injunctive/declaratory relief, compensatory damages, punitive damages, exclusive of attorneys' fees, court costs and expenses in the amount of <u>Ten Million Dollars</u> <u>($10,000,000.00)</u>

### III.  JURISDICTION AND VENUE

8.     Vernon seeks compensatory damages, punitive damages, attorneys' fees, costs, expenses, and such other relief in excess of this honorable Court's jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00).

9.     This honorable Court is the proper venue for this action pursuant to 28 U. S. C. §1391 (b)(1) and (b)(2) and Local Rule 1.02, United States District Court, Middle District of Florida because this is the judicial district and division in which Vernon resides, and in which the unlawful acts, events and omissions giving rise to Vernon's claims, as alleged herein occurred.

10.     Defendant Duval Medical Investors, LLC d/b/a Life Care Centers of Jacksonville and Life Care Centers of America, Inc., is a licensed foreign corporation organized under the laws of the State of Tennessee, whose corporate office is located at 3570 Keith Street, N.W. Cleveland, TN 37312-4309.

11.     Defendant Duval Medical Investors, LLC d/b/a Life Care Centers of Jacksonville is one of Life Care Centers of America Inc.'s affiliated assisted living companies.

12.     This honorable Court has personal jurisdiction over Defendant Duval Medical Investors, LLC d/b/a Life Care Centers of Jacksonville and Life Care Centers of America, Inc., in this action pursuant to Federal Rule of Civ. Pro., Rule 4, because it is a foreign corporation that is licensed to operate, transact, and conduct business in the State of Florida.

13.     Defendant Duval Medical Investors, LLC d/b/a Life Care Centers of Jacksonville and Life Care Centers of America, Inc's Registered Agent, according to the public record of the Florida's Department of State, Division of Corporations is: Corporation Service Company, 1201 Hayes Street, Tallahassee, Florida 32301.

14.     Vernon is a resident of Duval County, Florida and he was employed with

Defendant Duval Medical Investors, LLC d/b/a Life Care Centers of Jacksonville and Life Care Centers of America, Inc., at all times material; thus, this honorable Court has personal jurisdiction over Vernon.

15.     Duval Medical Investors, LLC d/b/a Life Care Centers of Jacksonville was Vernon's employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Florida Civil Rights Act of 1992, as amended  ("FCRA").

16.     Vernon's gender is male, and his sexual identity is gay/homosexual; thus, he is in a protected class recognized under Section Title VII and the FCRA.

17.     This Court has subject matter jurisdiction in this action because the parties are completely diverse in citizenship pursuant to 28 U.S. Code §1332 - Diversity of citizenship; amount in controversy; costs.

18.     Pursuant to 28 U.S.C. §1367, this honorable Court has supplemental, pendent jurisdiction in this action.

19.     Vernon timely filed his Charge of Discrimination with the United States Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") that is referenced and attached hereto as **Exhibit A**.

20.     Given the United States Supreme Court recent ruling in *Bostock vs. Clayton County* (Case No. 17–1618), 723 Fed. Appx. 964, reversed and remanded; No. 17–1623, 883 F. 3d 100, and No. 18–107, 884 F. 3d 560, affirmed.) and the nationwide implications and issues involved in the instant case, Vernon requested an early EEOC/FCHR Right To Sue to file/litigate these pressing matters in Court to vindicate his federally guaranteed employment rights.

21.     On May 7, 2021, the EEOC issued Vernon a Notice And 90 Day Right To Sue

Letter that is referenced and attached hereto as **Exhibit A.**

22.     All administrative conditions precedent to the filing of this action, have been timely filed, met, and performed.

## IV.     THE PARTIES

23.     Life Care Centers of America, Inc. is recognized as one of the largest privately held long-term elderly care and assisted living companies in the United States. Life Care Centers of America, Inc. has over 40,000 employees and it operates over 200 skilled nursing, rehabilitation, Alzheimer's, and senior living facilities across 28 states.

24.     Life Care Centers – Jacksonville ("LCCJ") is an affiliated assisted living facility in the Life Care Centers of America, Inc's corporate structure.

25.     Plaintiff Vernon is a Certified Nursing Assistant ("CNA" – License No:  CNA 99425).

26.     Vernon has over twelve (12) years of experience working as a CNA in various healthcare, nursing homes, assisted living facilities and in-home healthcare agencies.

27.     Vernon was employed as a full-time CNA at the LCCJ assisted living facility located at 4813 Lenoir Ave, Jacksonville, FL 32216 from July 3, 2019 until his wrongful job termination that occurred on March 5, 2020.

## FACTUAL BACKGROUND

28.     Vernon is a (33) year openly gay/homosexual male.

29.     In December 2016, Life Care Centers of America, Inc., (LCCA) hired Vernon to work as a CNA at its LCCA-Orlando, Florida nursing home facility.

30.     In July 2018, Vernon was approved to be transferred to work as a CNA in the LCCA-Tamarac, Florida nursing home facility.

31.     On July 3, 2019, LCCA approved Vernon's employment transfer request to work as a CNA at the LCCJ  assisted living facility located at 4813 Lenoir Ave, Jacksonville, FL 32216 ("LCCJ").

## LCCJ'S PREDOMINATE FEMALE WORKFORCE

32.     During the relevant time period, LCCJ had a predominate female workforce working in its assisted living facilities.

33.     During the relevant time period, Vernon was one of the only two male CNAs  that were working in LCCJ's assisted living facilities.

34.     Vernon wears his hair long and in a natural, dreadlock style.

35.     At all material times and during the acts alleged herein, LCCJ's Executive Director(s), managers, employees and LCCJ's residents/patients knew that Vernon is a gay/homosexual male.

36.     At all material times, Vernon was an exemplary employee and he dutifully served LCCA and LCCJ's patients/residents.

37.     At all material times, Vernon in all respects, was performing his job in a manner that was consistent with LCCJ's legitimate business expectations.

38.     LCCJ's patients/residents respected Vernon and liked him as their caregiver because he sincerely cares about the health, safety, and welfare of patients/residents.

## VERNON WAS APPROVED TO BE OFF OF WORK ON DECEMBER 7, 2019 TO ATTEND HIS FRIEND'S WEDDING IN ORLANDO, FLORIDA

39.     In October 2019, Vernon submitted his one-day work leave request to CHERYL McGRUDER, LCCJ's Director of Nursing ("McGruder") to attend his friend's wedding in Orlando, Florida on December 7, 2019.

40.     LCCJ's management advised Vernon that his December 7, 2019, leave request was approved.

## VERNON'S FIRST REPORT TO LCCJ'S EXECUTIVE DIRECTOR ABOUT THE SEXUAL ORIENTATION/GENDER DISCRIMINATION, HARASSMENT AND HOSTILE WORK ENVIRONMENT THAT HE WAS EXPERIENCING

41.     In October 2019, Vernon's female managers and co-workers began a tirade of offensive comments, bullying and intimidation directed at Vernon because of his sexual orientation and his female traits/mannerisms.

42.     In November 2019, Vernon wrote a handwritten complaint reporting the hostile work environment, bullying and intolerable harassment that he was enduring.

43.     Vernon participated in a face-to-face meeting with SAL DeCARIA, LCCJ's Executive Director/Administrator ("DeCaria"- Caucasian male), and JACSELY FLORES, RN, BSN, LCCJ's Unit Manager ("Flores" - Caucasian female). During this face-to-face meeting, Vernon hand delivered his sexual orientation discrimination/harassment complaint to DeCaria.

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

44.    Vernon's oral complaints and his written complaint reported that his female co-workers MICHELLE BOOKER, CNA ("Booker"), DORENTHIA ADAMS, CNA ("Adams") and JOYCE HARDIMAN, CNA ("Hardiman"), in particular were constantly bullying, harassing and subjecting him to derogatory comments about his sexual orientation and his feminine traits/mannerisms.

45.    Vernon informed DeCaria that he could no longer tolerate his female co-workers' intense harassment, bullying and their deliberate intent to create a hostile work environment for him because he did not fit their subjective gender (**male**) stereotypes.

46.    Vernon reported to DeCaria that certain female co-workers, Hardiman in particular, constantly harassed, bullied him, and directed offensive comments and questions at him during his working hours including, but not limited to:

        **A.**      **"You act like a woman"**

        **B.**      **" You are a woman"**

        **B.**      **"Sissy"**

        **C.**      **"I am not comfortable working around gays"**

        **D.**      **"I don't understand you gays"**

        **E.**      **" I have nephews that are gay like you"**

        **F.**      **"I don't like transsexuals"**

        **G.**      **"You walk like a woman"**

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

## VERNON COMPLAINED THAT LCCJ'S MANAGEMENT  INTENTINONALLY ASSIGNED TO HIM TO LCCJ'S  MOST DIFFICULT AND DEMANDING, AND MENTALLY INFIRMED  PATIENTS/RESIDENTS

47.     During Vernon's November 2019 face-to face meeting with DeCaria, Vernon also reported to DeCaria that LCCJ's management was treating him unequally by  assigning him to difficult, <u>unequal work assignments</u> and assigning him to care for LCCJ's most difficult, mentally challenged, and physically demanding LCCJ residents/patients.

48.     Vernon complained to DeCaria that under anti-discrimination employment laws, it was unequal and illegal discrimination for LCCJ to always provide its female CNAs more favorable treatment including, but without limitation, easier work assignments, the less demanding and less difficult patients/residents.

49.     Vernon complained that LCCJ's management was giving LCCJ's female CNAs more favorable treatment because they are females and showing more favorable treatment towards them by LCCJ's failure to discipline them for their harassment, bullying, misconduct, and their substandard work performance issues as alleged herein.

50.     Vernon informed DeCaria that although he had reported his co-workers' offensive misconduct to Flores and McGruder, they did nothing to stop the offensive statements and harassment of his female co-workers.

51.     Vernon, in good faith, asked DeCaria to stop the extremely hostile work environment that he was enduring and he in good faith asked DeCaria to discipline his offending female co-workers.

52.     Vernon asked DeCaria to give him a copy of his handwritten complaint for his personal records.

53.     DeCaria refused to give Vernon copy of his handwritten complaint and he assured Vernon that he would provide him with a copy of his written complaint on a later date.

54.     DeCaria, made it evident to Vernon that he was unconcerned about Vernon's complaints during this meeting.

55.     DeCaria did not provide Vernon with any feedback regarding his gender/sexual orientation complaints.

56.     DeCaria did not provide Vernon with a copy of his handwritten complaint.

**MCGRUDER RETALIATED AND SHE REVOKED VERNON'S APPROVED LEAVE**

57.     In October 2019, Vernon applied to use one (1) day of his (80+) hours of his unused, accrued vacation time to be off of work on December 7, 2019, so that he could attend his friend's wedding in Orlando, Florida.

58.     Approximately one week before Vernon's approved day to be off of work (December 7, 2019), McGruder informed him that she had revoked his vacation day and she demanded that he be at work on December 7, 2019.

59.     McGruder could not give Vernon a legitimate reason for the revocation of his approved leave.

60.     Vernon reported to work on December 7, 2019, as McGruder demanded.

61.     Upon information and belief, LCCJ had other available CNAs and temporary agency CNAs that were available and willing to work Vernon's December 7, 2019, work shift.

62.     There was no legitimate business reason for LCCJ (McGruder) to deny Vernon his approved December 7, 2019, day off of work.

## VERNON'S SECOND FACE-TO FACE MEETING WITH
## LCCJ'S EXECUTIVE DIRECTOR

63.     On or about March 3, 2020, Vernon met face-to-face with DARIN TONEY, LCCJ's new interim Executive Director/Administrator ("Toney").

64.     Vernon informed Toney that he is a homosexual/gay male.

65.     Vernon informed Toney about his prior oral and written complaints to LCCJ's former Executive Director, Flores, and McGruder regarding the overt gender discrimination, bullying and sexual orientation discrimination that he had, and was continuing, to endure.

66.     Vernon in good faith reported to Toney that certain female co-workers, Adams, Booker and Hardiman in particular, repeatedly subjected him to offensive and derogatory statements during his working hours including, but not limited to:

> A.     **"You act like a woman"**
>
> B.     **" You are a woman"**
>
> C.     **"Sissy"**
>
> D.     **"I am not comfortable working around gays"**
>
> E.     **"I don't understand you gays"**
>
> F.     **" I have nephews that are gay like you"**
>
> G.     **"I don't like transsexuals"**

67.     After this face-to-face meeting, DeCaria never provided Vernon with any feedback regarding his gender discrimination and sexual orientation complaint(s) nor did DeCaria initiate the mandated Title VII/FCHR internal investigation with regards to Vernon's complaints.

_____

## LCCJ'S MANAGEMENT SUBJECTED VERNON TO INCREASED SURVILLANCE AND SOUGHT PRETEXUAL RESONS TO DISCIPLINE VERNON

68.     After Vernon voiced his complaints of  gender discrimination and sexual orientation discrimination to DeCaria, LCCJ's management intentionally over scrutinized Vernon and continued to harass him about his work despite LCCJ's short staffing issues.

69.     For example, on March 3, 2020, during the time that Vernon was performing his resident caregiving duties, he asked his female coworker(s) to borrow an available chair to safely give a resident/patient a shower.

70.     When Hardiman overheard Vernon's attempts to care for his patient/resident, she directed offensive, derogatory comments about Vernon's sexual orientation, in the presence of LCCJ's patients/residents, including but not limited to:

        **A. "Yeah you want to be a woman"**

        **B.   "You are a woman"**

        **C.  " You walk and act like a woman"**

        **D.   " You talk like a woman"**

71.     In response to Hardiman's offensive comments, Vernon told Hardiman that she needed to "**fix her face**," because of the angry and sinister way that she was frowning and glaring at Vernon.

72.     Vernon again asked Hardiman to stop harassing him and he demanded that she stop her derogatory, offensive, homophobic slurs that she was directing at him.

73.     Vernon warned Hardiman that he would again her report her demeaning statements to LCCJ's Executive Director/Administrator and management.

74.     After Vernon warned Hardiman that was he preparing to report her derogatory gay statements and sexual orientation to LCCJ's management, that very day Hardiman lied to LCCJ's management and alleged that Vernon had made offensive comments to her about her physical appearance.

75.     Vernon did not make any derogatory comments about Hardiman's physical appearance.

76.     Rather than conduct a proper internal investigation of Vernon's complaints, LCCJ/McGruder disciplined Vernon on the grounds of Hardiman's false allegations.

## VERNON'S THIRD MEEETING WITH THE EXECUTIVE DIRECTOR

77.      On March 5, 2020, Vernon met again with Toney, face-to face, and he reported that his female co-workers (Booker, Hardiman and Adams) were still referring to him as a **"woman"** and directing other offensive, derogatory statements at him about his sexual orientation.

78.     Vernon reported to Toney that his work environment was hostile, intolerable, and causing him emotional distress.

79.     Vernon informed Toney that if he/LCCJ's management did not correct the hostile and sexual orientation that he was enduring, that he would be forced to leave his employment (constructive discharge).

80.     Rather than listen to Vernon and conduct a proper investigation of Vernon's complaint(s), Toney "angrily" stated to Vernon in part:

      A.     **"I already heard all about it"**

      B.     **"I know what is going on"**

      C.     **"I know what you are here to report"**

81.     Rather than listen to Vernon's legitimate concerns, Toney asked Vernon to write "another statement' about Hardiman, Adams, and Booker's harassment.

82.     When Vernon informed Toney that he had already given the former Executive Director a statement reporting their harassment/discrimination that should be in his employment file, Toney laughed in Vernon's face.

83.     Vernon  informed Toney that he was being forced to leave his employment because   of the unbearable   harassment, retaliation and because LCCJ's management was "setting him up  to fail" by making false allegations about his work performance and workplace conduct and because of LCCJ's failure to investigate his complaints.

84.     When Vernon stated to Toney,  **"you do not care"** Toney angrily stated to Vernon, in part "**Get Out Of My Office**" and he told Vernon to leave LCCJ's premises.

## LCCJ'S EXECUTIVE DIRECTOR'S THREATS TO HAVE VERNON ARRESTED

85.     While on his way out of the LCCJ facility, Vernon was saying his goodbyes to one of his assigned patients/residents that called out to him in LCCJ's patient/resident breakroom area.

86.     During the time that Vernon was saying goodbye to the patient/resident, Toney rushed into the LCCJ patient/resident breakroom, and he shouted out loudly to Vernon, in the presence of LCCJ's patients/residents, **"get out."**

87.     Toney then told Vernon that he was **"calling the police"** to have him arrested and escorted off of LCCJ's premises.

88.     Toney treated Vernon as if he were a common criminal and a threat to LCCJ's residents/patients.

89.     LCCJ's patients/residents and his co-workers that heard Toney's fiasco told Vernon that they were "sorry and upset" about how Toney was demeaning and threatening to have him arrested.

90.     Vernon left Toney's office visibly upset and crying in tears because he could not believe that DeCaria and Toney, in their positions as LCCJ's Executive Director(s) had such an uncaring and hostile attitude towards him and because they did stop the gender/sexual orientation discrimination, retaliation, and hostility that he was experiencing.

## VERNON'S CO-WORKER(S) INFORMED HIM OF LCCJ'S SEXUAL ORIENTATION DISCRIMINATION AND OF LCCJ'S INTENT TO TERMINATE HIS EMPLOYMENT

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

91.    LCCJ's management gender/sexual orientation discrimination and animus towards Vernon, is evidenced by the text message of one of Vernon's co-workers as evidence in **Illustration A** below:



**ILLUSTRATION A**

_____

92.    Vernon made direct and repeated complaint to LCCJ management about the sexual orientation and unlawful discrimination that he was experiencing.

93.    Vernon suffered an ongoing pattern of disparate and/or discriminatory treatment and unlawful retaliation, including without limitation the over-scrutinizing of his work, subjected

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

him to unequal, more demanding and difficult work tasks, maliciously revoked his approved leave to prevent him from attending his friend's wedding, and fabricating false reasons to subject him to discipline and threatening to unnecessarily call law enforcement on Vernon to tarnish his impeccable background.

94.     At all material times, LCCJ had a legal duty to investigate Vernon's complaints of sexual orientation discrimination; yet LCCJ failed to take all available and reasonable steps to prevent the unlawful discrimination and harassment that was occurring in violation of Title VII.

95.     LCCJ's actions, misfeasance and negligence as alleged herein, demonstrate a willful indifference and callous disregard for Vernon's  federal and state employment rights and his fundamental right to be treated with dignity and respect as LCCJ's non gay/homosexual employees.

96.     LCCJ's conduct as described herein was malicious, fraudulent, and oppressive and was done with a willful and conscious disregard for Vernon's employment rights and for the deleterious consequences of LCCJ's actions.

97.     LCCJ's managers/supervisors authorized, condoned, and ratified the unlawful discrimination and misconduct of each other. Vernon is thereby entitled to punitive and exemplary damages against LCCJ.

98.     LCCJ is vicariously liable for the malicious acts, unlawful retaliation, unequal treatment, negligence and misfeasance of its managers, employees, and agents, as alleged herein, under the respondent superior doctrine.

99.     Vernon has incurred and continues to incur attorneys' fees and legal expenses in an amount to be proven at trial.

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

100.     As a proximate result of the unlawful discrimination and wrongful acts of LCCJ,

Vernon has been forced to hire attorneys to prosecute his claims herein, and he has incurred and

is expected to continue to incur attorneys' fees and costs therewith. Vernon is entitled to recover

attorneys' fees and costs under Title VII and the FCRA.

101.     All administrative conditions precedent to the filing of the instant lawsuit have

been met by Vernon as alleged in paragraphs 19-22 supra.

**COUNT I**
**UNLAWFUL EMPLOYMENT DISCRIMINATION AND UNEQUAL TREATEMENT**
**ON THE BASIS OF SEXUAL ORIENTATION**
**Title VII Of The Civil Rights Act of 1964, as amended ("Title VII")**

**TITLE VII and THE FCRA**

102.     Vernon re-alleges the paragraphs 1-101 with respect to Count 1.

103.     Vernon is an openly gay/homosexual male; thus, Vernon is a member of a

protected class under Title VII and the FCRA on the basis of his sexual orientation.

104.     Vernon, in all respects, was performing his job in a manner that was consistent

with LCCJ's legitimate business expectations.

105.     At all times relevant, for purposes of this Complaint and Jury Demand, Title VII

and the FCHR were in full force, effect, and binding on LCCJ. Title VII and the FCRA makes it

unlawful for an employer, on the basis of sexual orientation, "to discriminate against the person

in compensation or in terms, conditions or privileges of employment."

106.     At all times relevant, for purposes of this Complaint and Jury Demand, Title VII

and the FCHR was in full force, effect, and binding on LCCJ. Title VII and the FCRA makes it

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

unlawful for an employer, on the basis of sexual orientation, "to discriminate against the person in compensation or in terms, conditions or privileges of employment.

107.    LCCJ's management was treated Vernon unequally by assigning him to difficult, unequal work assignments and assigning him to care for LCCJ's most difficult, mentally challenged, and physically demanding LCCJ residents/patients.

108.    At all material times, it was unequal and illegal discrimination for LCCJ to always provide its female CNAs more favorable treatment including, but without limitation, easier work assignments, and the less demanding and less difficult patients/residents.

109.    LCCJ unlawfully discriminated against Vernon as described above, including but not limited to harassing him because of his sexual orientation, female traits and mannerisms, directing derogatory offensive comments at him, subjecting him to a hostile work environment based on his sexual orientation, assigning him to LCCJ's most difficult and less desired patients/residents, and threating to involve Vernon with law enforcement during the time that Vernon was exercising his protected employment speech activities recognized under Title VII and the FCRA.

110.    Vernon's attraction to the same sex or his presentation as a different sex from the one assigned him at birth, played an important role LCCJ's male Executive Directors failure to investigate and LCCJ's decision to assign Vernon to LCCJ's most difficult and less desired patients/residents, to retaliate against Vernon, to terminate Vernon's employment and LCCJ's Executive Director/Administrator's motivation to publicly embarrass Vernon in the presence of LCCJ's patients/residents.

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

111.    LCCJ's inactions, actions and its misfeasance as alleged herein, were taken with a callous, willful, and wanton disregard of Vernon's employment rights and his entitlements under Title VII and the FCRA.

112.    As a direct and proximate result of said unlawful employment practices and discrimination, Vernon has suffered public humiliation, public degradation, emotional distress, lost wages, consequential damages and lifetime embarrassment and humiliation.

113.    WHEREFORE, Vernon seeks compensatory damages, punitive damages, and injunctive/declaratory relief against LCCJ under the anti-sexual orientation discrimination provisions of Title VII and FCRA,  plus reasonable attorneys' fees, costs, expenses, pre-judgment and post-judgment interest, and such other relief as the Court deems and as justice so requires under the circumstances.

## COUNT II
## UNLAWFUL EMPLOYMENT RETALIATION
## VERNON'S OPPOSITION TO LCCJ'S HARASSMENT, BULLYING, HOSTILE WORK ENVIRONMENT, AND UNEQUAL TREATMENT ON THE BASIS OF HIS OPENLY GAY STATUS AND SEXUAL ORIENTATION

## TITLE VII and THE FCRA

114.    The allegations contained in paragraphs 1-101 and in particular, paragraphs 68-101 are hereby incorporated by reference with respect to Count II.

115.    At all times relevant, for purposes of this Complaint and Jury Demand, Title VII and the FCRA were in full force, effect, and binding on LCCJ. Title VII and the FCRA makes it

unlawful for an employer, on the basis of sexual orientation, "to discriminate against the person in compensation or in terms, conditions or privileges of employment."

116.    Vernon had the right to keep his LCCJ employment and his contractual relationship with LCCJ <u>after</u> he opposed the hostile work environment that he was enduring based on his sexual orientation.

117.    Vernon's opposition to LCCJ's sexual orientation discrimination was reasonable and made by Vernon in good faith.

118.    After Vernon had engaged in protected employment speech activities as alleged herein, LCCJ unlawfully retaliated against Vernon and subjected him to adverse employment actions, including but not limited to the over-scrutinizing of his work, subjected him to unequal, more demanding and difficult work tasks, maliciously revoked his approved leave to prevent him from attending his friend's wedding, and fabricating false reasons to discipline him, and making unwarranted threats to call the Jacksonville Sheriff's Office to have Vernon arrested/escorted from LCCJ's premises, thereby creating a hostile work environment.

119.    There exists a close proximity in time and a causal link between Vernon's opposition to LCCJ's sexual orientation discrimination and LCCJ's management decision to the over-scrutinizing Vernon's work, subjected him to unequal, more demanding and difficult work tasks, maliciously revoking his approved leave to prevent him from attending his friend's wedding, fabricating false reasons to discipline him, and making unwarranted threats to call the Jacksonville Sheriff's Office to have arrested/escorted from the LCCJ's premise thereby creating a hostile work environment.

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

120.    Vernon's attraction to the same sex or his presentation as a different sex from the one assigned him at birth, played an important role in LCCJ's male Executive Directors failure to investigation and its decision to retaliate against Vernon, to terminate Vernon's employment and to public embarrass Vernon in the presence of LCCJ's patients/residents.

121.    As a direct and proximate result of LCCJ's unlawful retaliation as alleged herein, Vernon has suffered damages including, loss of income, loss of future income, loss of his personal dignity, emotional distress, attorneys' fees, costs, expenses, and other consequential damages not capable of being ascertained at the present time.

122.    WHEREFORE, Vernon seeks injunctive/declaratory relief, compensatory damages, punitive damages against LCCJ under the anti-discrimination provisions of Title VII and the FCRA, plus reasonable attorneys' fees, costs, expenses, pre-judgment and post-judgment interest, and such other relief as the Court deems and as justice so requires under the circumstances.

<u>COUNT III</u>
**FAILURE TO INVESTIGATE AND PREVENT DISCRIMINATION
IN VIOLATION OF  TITLE VII and THE FCRA**

123.    Vernon re-alleges the paragraphs 1-101 as though fully set forth herein and in particular paragraphs 47-101  with respect to Count 1II.

124.    Vernon is an openly gay/homosexual male; thus, Vernon is a member of a protected class under Title VII and the FCRA on the basis of his sexual orientation/gay.

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

125.    Vernon in all respects, was performing his job in a manner that was consistent with LCCJ's legitimate business expectations. Vernon performed his work competently and in a satisfactory manner.

126.    At all times relevant, for purposes of this Complaint and Jury Demand, Title VII and the FCHR were in full force, effect, and binding on LCCJ. Title VII and the FCRA requires LCCJ among other things, **"to take all reasonable steps necessary to prevent discrimination and harassment from occurring."**

127.    After LCCJ learned about Vernon's sexual orientation/gay status, LCCJ unlawfully discriminated against Vernon as described above, including but not limited to harassing him because of his sexual orientation, feminine traits and mannerisms, directing derogatory offensive comments at him, subjecting him to a hostile work environment based on his sexual orientation and threating to involve law enforcement at all material times Vernon was exercising his protected employment speech activities recognized under Title VII and the FCRA.

128.    In perpetrating the above-described acts and failures to act, LCCJ and its agents violated those provisions by failing to take all reasonable steps necessary to prevent such discrimination based on sexual orientation from occurring. In violation of Title VII and the FCRA, these acts and failures to act include but are not limited to the following:

A.    Failing to implement policies, practices, and procedures and/or having ineffective policies, practices, and procedures regarding handling complaints of unlawful discrimination.

B.    Failing to investigate when discrimination was reported, despite such reports.

C.      Failing to provide any and/or adequate training, education, or information to their personnel and most particularly to its Executive management officials and supervisory personnel with regards to anti-discrimination policies and procedures.

D.      Failing to appoint a qualified, neutral third-party to investigate Vernon's complaints related to unlawful discrimination and retaliation.

E.      Failing to take permanent remedial steps reasonably calculated to end unlawful discrimination.

129.    During the entire relevant time period, LCCJ failed to take all reasonable steps to prevent unlawful discrimination and such discrimination was condoned, encouraged, tolerated, sanctioned, and ratified by LCCJ's management.

130.    During the entire relevant time period, LCCJ failed to provide any and/or adequate training, education and/or information to their personnel and most particularly to management and supervisory personnel with regards to policies, and procedures regarding unlawful discrimination on the basis of sexual orientation and gender.

131.    During the entire relevant time period, LCCJ failed to take reasonable steps to prevent discrimination from being inflicted against Vernon.

132.    Vernon's attraction to the same sex or his presentation as a different sex from the one assigned him at birth, played an important role LCCJ's male Executive Directors failure to investigate.

133.    LCCJ's inactions, actions and misfeasance were taken with a callous, willful, and wanton disregard of Vernon's employment rights and his entitlements under Title VII and the FCRA.

134.    As a direct and proximate result of said unlawful employment practices, Vernon has suffered public humiliation, public degradation, emotional distress, lost wages, consequential damages and lifetime embarrassment and humiliation.

135.    WHEREFORE, Vernon seeks compensatory damages, punitive damages, and injunctive/declaratory relief against LCCJ under the anti-sexual orientation discrimination provisions of Title VII and FCRA,  plus reasonable attorneys' fees, costs, expenses, pre-judgment and post-judgment interest, and such other relief as the Court deems and as justice so requires under the circumstances.


### RESERVATION OF RIGHTS

136.    Vernon reserves his rights to amend the instant Complaint and Demand for Jury Trial and his right to file additional claims against LCCJ.

### PRAYER FOR RELIEF AND DAMAGES

137.    WHEREFORE, Vernon requests judgment, compensatory damages, punitive damages, and consequential damages, against LCCJ as follows:

A.    An award to Vernon for compensatory damages, punitive damages, attorneys' fees, expert witness fees, costs, and expenses against LCCJ under the anti-discrimination provisions of Title VII and the FCRA;

B.       An award to Vernon for compensatory damages, punitive damages, attorneys' fees, expert witness fees, costs, and expenses for LCCJ's failure to investigate under the anti-discrimination provisions of Title VII and the FCRA;

C.       An award to Vernon for compensatory damages, punitive damages, attorneys' fees, expert witness fees, costs, and expenses under the anti-retaliation provisions of Title VII and the FCRA;

D.       Grant Vernon a Jury Trial under the trial by jury provisions of Title VII and FCRA;

E.       Grant Vernon the applicable interest on any awards that he receives as allowed by law; and

F.       Grant Vernon such other and further relief as the Court deems just and appropriate under the circumstances.

DATED:  July <u>23,</u> 2021.                          Respectfully submitted:

                                                   **THE JONES LAW FIRM, P.A.**

                          BY:        **s/J. Eric Jones, Esquire**
                                      Florida Bar No: 0594571
                                      10752 Deerwood Parkway, Suite 100
                                      Jacksonville, FL 32246
                                      Telephone: (904) 434-7553
                                      Email: wereallycareaboutu@gmail.com
                                      Plaintiff's Attorney

# EXHIBIT A

**VERNON'S  EEOC CHARGE OF DISCRIMINATION AND**

**NOTICE AND RIGHT TO SUE LETTER**

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

# EXHIBIT B

**2019 JURY VERDIT**

**TITLE VII SEXUAL ORIENTATION DISCRIMINATION**

*'Tone Down Your Gayness': Police Sergeant Is Awarded $20 Million in Discrimination Case*

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

## 'Tone Down Your Gayness': Police Sergeant Is Awarded $20 ...

https://www.nytimes.com › gay-police-officer-st-louis

Oct 29, 2019 — A **jury** in St. Louis has awarded a **gay police** sergeant nearly **$20 million** in a discrimination case involving claims that the department ...

## *'Tone Down Your Gayness': Police Sergeant Is Awarded $20 Million in Discrimination Case*

The sergeant, who is gay, had said the St. Louis County Police Department failed to promote him based on sex stereotyping and retaliated against him for filing a lawsuit.



Over the course of five and a half years, Sgt. Keith Wildhaber, above, was turned down for 23 promotions.Credit...Cristina M. Fletes/St. Louis Post-Dispatch, via Associated Press

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*

By Heather Murphy

Oct. 29, 2019

A jury in St. Louis has awarded a gay police sergeant nearly $20 million in a discrimination case involving claims that the department failed to promote him based on sex stereotyping and retaliated against him for filing a lawsuit.

The sergeant, Keith Wildhaber, 47, said that he was told to "tone down" his sexuality while working for the St. Louis County Police Department, and that he was transferred to another precinct after he filed a discrimination complaint.

The county executive released a statement Monday promising leadership changes to the police board, which oversees the police chief.

"Our police department must be a place where every community member and every officer is respected and treated with dignity," Dr. Sam Page, the county executive, said on Twitter. "Employment decisions in the department must be made on merit and who is best for the job."

The lawsuit was sparked by a conversation in February 2014 between Sergeant Wildhaber and a member of the St. Louis County Board of Police Commissioners who owned a restaurant. Sergeant Wildhaber had applied for a lieutenant position with the Police Department at the time.

While at the restaurant, the owner, John Saracino, told Sergeant Wildhaber that he was aware that the sergeant had applied for a promotion.

"The command staff has a problem with your sexuality," Mr. Saracino said, according to Sergeant Wildhaber. "If you ever want to see a white shirt" — meaning a promotion — "you should tone down your gayness."

Court documents show that an assessment of Sergeant Wildhaber, who had more than 15 years of experience on the force, landed him in the top three of 26 candidates, but he did not get the job. Over the course of five and a half years, he was turned down for 23 promotions, the lawsuit claims.

In April 2016, Sergeant Wildhaber filed a discrimination complaint with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights. One month later, he was transferred to another precinct around 27 miles from his home, where he was assigned to work an overnight shift, according to court documents. He then filed a second charge of retaliation.

During the weeklong trial at the St. Louis County Circuit Court last week, Chief Jon Belmar testified that issues unrelated to Sergeant Wildhaber's sexuality prevented his promotion, including tipping off the target of an F.B.I. investigation and failing to submit official reports, according to The St. Louis Post Dispatch.

Chief Belmar said that he had not punished Sergeant Wildhaber for being gay nor quashed his advancement, and that he had been unaware of the transfer, which the county's lawyer attributed to other reasons. The St. Louis County Police Department declined to comment on Monday.

On Friday, the jury capped the proceedings with three hours of deliberations before awarding Sergeant Wildhaber $1.9 million in actual damages and $10 million in punitive damages on the discrimination allegation. The jury also awarded Sergeant Wildhaber $999,000 in actual damages and $7 million in punitive damages for the retaliation allegations.

"We wanted to send a message," the jury foreman told reporters, according to The Post-Dispatch. "If you discriminate, you are going to pay a big price."

Four jurors told The Post-Dispatch that they were affected by testimony from the widow of a former police officer, who said the police Capt. Guy Means had called Sergeant Wildhaber "fruity" at an event in 2015, and that he would never be promoted because he was "way too out there with his gayness and he needed to tone it down if he wanted a white shirt."

Captain Means testified Thursday that he did not know the widow. But on Friday, the widow produced a photo showing them together, according to The Post-Dispatch.

"The county should be ashamed," Mr. Wildhaber's lawyer, Russell Riggan, said during his closing argument to the jury. "Our community deserves better."

Mr. Riggan said Sergeant Wildhaber was not available for comment. Attempts to reach Sergeant Wildhaber on Monday were unsuccessful.

County Counselor Beth Orwick said that her office was reviewing its legal options and would do "what is in the best interest of the citizens of St. Louis County."

The St. Louis County Police Union said in a statement Monday that it was "extremely embarrassed" by the reported actions of some of its senior commanders.

"We look forward to the healing process that can begin to take place now that this has been heard in open court," the union said.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the forgoing, Plaintiff Daniel Vernon's Complaint and Jury Demand was electronically filed on the CM/ECF, United States District Court, Middle District of Florida's (Jacksonville Division) E-Portal system.

**s/J. Eric Jones**
Attorney

*The Jones Law Firm, PA, 10752 Deerwood Park, Suite 100, Water view Office, Jacksonville, FL 32256*